JOSHUA F. YOUNG (CA Bar No. 232995)
(Email: jyoung@gslaw.org)
GILBERT & SACKMAN
A LAW CORPORATION
800 Wilshire Boulevard, Suite 1410
Los Angeles, California 90017
Telephone: (323) 938-3000
Fax: (323) 937-9139

Attorneys for Petitioner
PABLO PASCAL BALTAZAR

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PABLO PASCAL BALTAZAR,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, Adelanto ICE Processing Center; Thomas GILES, Los Angeles Field Office Director for U.S. Immigration and Customs Enforcement; David VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; Markwayne MULLIN, Secretary of Homeland Security; Todd BLANCHE, Attorney General of the United States,<br><br>Respondents. | Case No. 5:26-cv-6186<br><br>**PETITION FOR WRIT OF HABEAS CORPUS**<br><br>*[28 U.S.C. § 2241]* |

Petitioner brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, the All Writs Act, 28 U.S.C. § 1651, and Article I, Section 9, of the Constitution of the United States. Petitioner alleges in support of his petition:

## INTRODUCTION

1. This Petition seeks the immediate release of Pablo Pascal Baltazar ("Petitioner" or "Mr. Baltazar")[1], the father of four U.S. citizens who has lived in this country for over a quarter century, who is currently detained at the Adelanto ICE Processing Center in Adelanto, California .

2. On October 14, 2026, Petitioner was walking from his apartment complex toward his car in Hollywood, California in the early morning when he was approached and arrested by Respondents' agents. They also arrested several other individuals around the apartment building. Respondents' agents did not show Petitioner a warrant.

3. Petitioner's detention is unlawful for several reasons, each of which independently warrants his immediate, unconditional release. "Releasing Petitioner is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents violated Petitioner's due process rights. Moreover, allowing the government to 'cure' such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless . . ." *Villa Cambron v. Johnson*, No. 5:26-CV-04624-KES, 2026 WL 2584950, at *6 (C.D. Cal. Sept. 1, 2026).

4. First, violating a directly applicable injunction in *Vasquez Perdomo v. Mullin*, No. 2:25-CV-05605-MEMF-SP, 2026 WL 2751388 (C.D. Cal. Sept. 2, 2026), Respondents detained Petitioner without a valid administrative warrant, and without making an individualized determination that Mr. Baltazar—a long-time resident who was apprehended near his own home—was "likely to escape before a warrant could be obtained." 8 U.S.C. § 1357(a)(2).

5. Second, to the extent that Respondents may have arrested Petitioner pursuant to an administrative warrant, any such warrant (and any arrest undertaken pursuant to such

[1] Petitioner's A number is 246-059-217.

warrant) was invalid. 8 U.S.C. § 1226(a)'s implementing regulations only authorize an administrative warrant to be issued *after* a Notice to Appear ("NTA") initiating removal proceedings has been issued. There had been no NTA issued in Petitioner's case at the time of his detention.

6. Lastly, under the Due Process Clause of the Fifth Amendment, ICE must first conduct an individualized assessment of an individual's flight risk and danger to the community before taking them into custody. Under the facts and circumstances presented in Mr. Baltazar's case—including many decades of residence in the United States and extensive family ties—pre-deprivation notice and opportunity to be heard was constitutionally mandated as a matter of procedural due process. Upon information and belief, this process was not afforded to Petitioner and his continued detention is thus in violation of the law.

7. Furthermore, Petitioner asks the Court to enjoin his transfer outside this District. *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1237 (2d Cir. 1992) ("Once the district court acquires jurisdiction over the subject matter of, and the parties to, the litigation, the All Writs Act [28 U.S.C. § 1651] authorizes a federal court to protect that jurisdiction" (cleaned up)); 28 U.S.C. § 2243 ("Unless the application for the writ and the return present only issues of law the person to whom the writ is directed shall be required to produce at the hearing the body of the person detained. The applicant or the person detained may, under oath, deny any of the facts set forth in the return or allege any other material facts.").

## PARTIES

8. Petitioner, Pablo Pascal BALTAZAR, has lived in the United States since November 1999. He is currently detained in the custody of Respondents at the Adelanto ICE Processing Center, in Adelanto, California.

9. Respondent WARDEN, Adelanto ICE Processing Center is named in his official capacity. He is Petitioner's immediate custodian.

10. Respondent Thomas GILES is named in his official capacity as the Field Office Director for ICE's Los Angeles Field Office. He is responsible for the administration of immigration laws and the execution of detention warrants and removal orders, and is one of Petitioner's legal custodians.

11. Respondent David VENTURELLA is named in his official capacity as Acting Director of ICE. He is responsible for the administration of immigration laws and is one of Petitioner's legal custodians.

12. Respondent Markwayne MULLIN is named in his official capacity as the Secretary of Homeland Security in the United States Department of Homeland Security ("DHS"). In his official capacity, Mr. Mullin is responsible for the administration of the immigration laws pursuant to 8 U.S.C. § 1103(a); routinely transacts business in the Central District of California; is legally responsible for pursuing any effort to remove Petitioner, and is a legal custodian of Petitioner.

13. Respondent Todd BLANCHE is named in his official capacity as the Attorney General of the United States. In his official capacity, Mr. Blanche is responsible for the administration of the immigration laws as exercised by the Executive Office for Immigration Review ("EOIR"), pursuant to 8 U.S.C. § 1103(g). He routinely transacts business in the Central District of California and is legally responsible for administering Petitioner's removal and custody proceedings and for the standards used in those proceedings. As such, he is a legal custodian of Petitioner.

## JURISDICTION

14. Federal district courts have jurisdiction under 28 U.S.C. § 2241 to hear habeas corpus petitions by noncitizens challenging the lawfulness or constitutionality of their detention by ICE. *See, e.g.*, *Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

15. This Court has subject matter jurisdiction over this Petition pursuant to 28 U.S.C. § 2241 (habeas); 28 U.S.C. § 1331 (federal question); and Article I, § 9, cl. 2 of the United

States Constitution. The Court has remedial authority under the All Writs Act, 28 U.S.C. § 1651 and the Declaratory Judgment Act, 28 U.S.C. § 2201.

**EXHAUSTION**

16. Requiring administrative exhaustion is not appropriate where a habeas petition "raises legal and constitutional challenges to [a Petitioner's] arrest and detention that would not be before the BIA and, in any event, the BIA could not consider because it does not have jurisdiction to determine the constitutionality of the statutes it administers." *Moscui v. Semaia*, No. 5:26-CV-05748-MBK, 2026 WL 3027140, at *4 (C.D. Cal. Oct. 8, 2026) (internal citations and quotation marks omitted); *see also Mejia v. Warden,* No. ED CV 26-5705-E, 2026 WL 3019449, at *2 (C.D. Cal. Oct. 7, 2026) ("Petitioner should not be required to forestall seeking this Court's assistance until after an immigration judge (and the Board of Immigration Appeals) have completed administrative proceedings. The present Petition claims a deprivation of constitutional due process, a claim not within the jurisdiction of the immigration judge or the Board of Immigration Appeals.").

17. Exhaustion of administrative remedies in immigration detention cases is considered a prudential concern, rather than a statutory requirement. *Moscui,* 2026 WL 3027140 at *3.

18. Courts "have discretion to waive a prudential requirement" where "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 998, 1000 (9th Cir. 2004).

19. Petitioner's case checks all of these boxes. First, Petitioner challenges his warrantless arrest as violative of the statute, regulations, and the Constitution, and asserts that his immediate release is an appropriate remedy.

20. There is no forum before the Immigration Court in which he can raise this claim or seek this remedy. If Petitioner were to request a bond hearing under 8 U.S.C. § 1226(a)—and the Immigration Judge were to find that he or she has jurisdiction to hold such a hearing—Petitioner may have a post-deprivation avenue to securing release on a hefty

monetary bond. This does not remedy Petitioner's claims and relates to a wholly separate issue. The Immigration Judge has no discretion or authority to inquire into the legality of Petitioner's arrest or to order Petitioner's release even if that arrest is found to be flagrantly unlawful. Only this Court, sitting in habeas, has such authority.

21. Second, Petitioner's claims raise substantial constitutional questions regarding potential due process and Fourth Amendment violations surrounding Respondents' decision to keep him in detention. And lastly, the available remedies and subsequent administrative appeal would be futile as Petitioner's unlawful deprivation of liberty is ongoing and constitutes an irreparable injury, as such detention could result in the loss of Petitioner's job, home, and income with which he supports his U.S. citizen family members.

## VENUE

22. Venue is proper in this Court because Petitioner is physically confined at the Adelanto ICE Processing Center within the Central District of California and was there at the time of filing of this Petition. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (finding that venue is determined at the time a habeas petition is filed).

## FACTS

23. Petitioner is the father of four U.S. citizens who has been residing in the United States since approximately 1999. Petitioner has ties to his community including attendance at the Immaculate Heart of Mary Catholic Church in Los Angeles.

24. On October 14, 2026, Petitioner was arrested early in the morning by Respondents' agents as he was walking from his apartment building to his car. Respondents' agents arrested others in the same area at the same time.

25. Respondents did not show Petitioner an administrative warrant prior to detaining him.

26. Respondents did not make any individualized finding that Petitioner was a danger to the community or flight risk prior to apprehending him, nor did they provide him any opportunity to provide evidence that he was neither of those things.

27. Because Petitioner has never been in removal proceedings, no Notice to Appear ("NTA") had been filed in his case at the time of his detention.

28. Following his initial arrest, Petitioner was brought to the Adelanto ICE Processing Center in Adelanto, California, where he remains today.

29. A NTA was filed commencing removal proceedings at the Adelanto Immigration Court on October 16, 2026. Petitioner is currently scheduled to appear for his first master calendar hearing on October 28, 2026.

30. Upon information and belief, Petitioner is eligible to apply for cancellation of removal for certain non-permanent residents, 8 U.S.C. § 1229(b), insofar as he has resided in the United States continuously for over 10 years, has been a person of good moral character, has not been convicted of any disqualifying offenses, and has at least two qualifying U.S. Citizen relatives—two U.S. Citizen children under the age of twenty-one—who would suffer severe hardship if he were removed.[2]

31. Petitioner remains in detention today as a product of this unlawful arrest. While he is eligible to request a post-deprivation bond hearing before an Immigration Judge, any such hearing would not remedy the injury that he suffered as a result of his initial arbitrary and unlawful detention.

## LEGAL FRAMEWORK

### I. Petitioner's Warrantless Arrest and Detention Violates the Immigration and Nationality Act, 8 U.S.C. § 1226(a), and Implementing Regulations, 8 C.F.R. § 236.

32. Respondents' conduct violates an injunction issued by a court in this District, which enjoins Respondents from making a warrantless immigration arrest in this District without an individualized determination that the person is likely to escape before a warrant can be obtained. *See Vasquez Perdomo v. Mullin*, No. 2:25-CV-05605-MEMF-SP, 2026 WL 2751388, at *31 (C.D. Cal. Sept. 2, 2026) ("Defendants are enjoined from enforcing their policy and practice of making warrantless civil immigration arrests in this District without

[2] Petitioner has four U.S. Citizen children in total.

a prearrest individualized determination by the arresting agent or officer of probable cause that the person being arrested is likely to escape before a warrant can be obtained, as required by 8 U.S.C. 1357(a)(2) and 8 C.F.R. § 287.8(c)(2). In considering the likelihood of a person's escape before a warrant can be obtained for their arrest, an immigration agent or officer must consider the totality of the circumstances known to the agent or officer before making the arrest. These include circumstances the agent or officer learns or can discover between first encountering a person and arresting them without a warrant. Mere presence within the United States in violation of United States immigration law is not, by itself, sufficient to conclude that a person is likely to escape before a warrant for arrest can be obtained.").

33. Pursuant to 8 U.S.C. § 1226(a)—the INA provision governing Petitioner's arrest—immigration officers are only authorized to arrest and detain an individual pending a removal decision only "[o]n a warrant issued by the Attorney General[.]" 8 U.S.C. § 1226(a).

34. Numerous courts have held that arrest and detention under 8 U.S.C. § 1226(a) without a warrant are unlawful and have ordered release in such circumstances. *See Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025) (ordering release to remedy warrantless arrest and noting that "absent a warrant a noncitizen may not be arrested and detained under section 1226(a)") (emphasis in original); *accord Ahmed M. v. Bondi*, No. 25 Civ. 4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026); *J.A.C.P. v. Wofford*, No. 1:25 Civ. 1354 (KES), 2025 WL 3013328, at *8 (E.D. Cal. Oct. 27, 2025); *Florida v. United States*, 660 F. Supp. 3d 1239, 1276 (N.D. Fla. 2023), appeal dismissed, 2023 WL 5212561 (11th Cir. July 11, 2023).

35. The reference to a warrant in 8 U.S.C. § 1226(a) presupposes that the warrant be validly issued. But Section 1226(a)'s implementing regulations prohibit the issuance of warrants before a Notice to Appear ("NTA") has issued. *See* 8 C.F.R. § 236.1 ("*[a]t the time of issuance of the notice to appear, or at any time thereafter and* up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under

the authority of Form I-200, Warrant of Arrest." 8 C.F.R. § 236.1(b)(1) (emphasis added)). "In other words, an I-200 cannot be used to effectuate an arrest before an NTA has been issued." *Yeleshev v. Larocco*, No. 26-cv-2294-SJB, 2026 WL 1353806, at *2 (E.D.N.Y. May 14, 2026); *Parada Cruz v. Mullin*, No. 26-CV-1110-SJB, 2026 WL 1027441, at *2 (E.D.N.Y. Apr. 16, 2026) ("If ICE wants to use a warrant, it must have a valid NTA in place.").[3]

36. In the event that, unbeknownst to Petitioner, DHS issued an administrative warrant at some point surrounding his arrest, any such warrant would have been invalid, because it preceded the issuance of a NTA in his case.

37. The INA and its implementing regulations specify an exception to the warrant requirement, which must be applied within the confines of the Fourth Amendment's constitutional protections. Respondents, however, have not met the requirements for this exception.

38. The INA contains a two-pronged requirement that officers must meet before conducting a warrantless immigration arrest in the interior of the country. 8 U.S.C. § 1357(a)(2). Such an arrest is authorized only if the officer "has reason to believe" that two conditions are met: (1) "the [noncitizen] so arrested is in the United States in violation of any such law or regulation [related to the admission, exclusion, expulsion or removal of noncitizens];" and (2) the noncitizen "is likely to escape before a warrant can be obtained for his arrest." *Id.*; *see also* 8 C.F.R. § 287.8(c)(2)(i)-(ii) ("[A]n arrest shall be made only when the designated immigration officer has reason to believe that the person to be arrested has committed an offense against the United States or is a[] [noncitizen] illegally in the United States," and "that the person is likely to escape before a warrant can be obtained."); *see also Arizona v. United States*, 567 U.S. 387, 408 (2012) (explaining the statute requires two prongs and noting that federal agents "'may arrest a[] [noncitizen] for being 'in the United States in violation of any [immigration] law or regulation,' for example, but only

[3] *See also, e.g., Aguilar Torres v. Hardin*, No. 2:26-CV-01480-SPC-DNF, 2026 WL 1353242, at *1 (M.D. Fla. May 15, 2026) (I-200 warrants issued without a contemporaneous or previously issued notice to appear are invalid and ordering release).

where the [noncitizen] 'is likely to escape before a warrant can be obtained.'" (quoting 1357(a)(2)).

39. The Court in *Vasquez Perdomo* found that Respondents maintained warrantless arrest policies including "no escape risk assessment, escape risk assessment based solely on unlawful status, and escape risk assessment based on false assertions [which] operate in tandem to support the stated goal of arresting everyone without lawful status, thereby avoiding the escape risk assessment requirement, and by doing so, violat[ed] federal law and the rights of Plaintiffs" because 8 U.S.C. § 1357 "requires that an officer who seeks to conduct a warrantless arrest must have reason to believe ... that the [noncitizen] is *likely to escape* before a warrant can be obtained for his arrest." *Vasquez Perdomo*, 2026 WL 2751388, at *17-18 (emphasis in original) (citations omitted).

40. Accordingly, consistent with the District-wide injunction in *Vasquez Perdomo,* numerous courts have granted habeas corpus relief where Respondents failed to demonstrate—under the individual facts and circumstances presented in each case—that a petitioner was likely to escape if a warrant was obtained. *See, e.g., Qu v. Janech*, No. 5:26-CV-05419-CTS, 2026 WL 3034853, at *4 (C.D. Cal. Oct. 9, 2026) ("Multiple courts have recently granted habeas relief to petitioners who were detained by ICE officials without a warrant where the facts did not indicate that there had been any likelihood of escape . . . Further, the relief granted in these circumstances is release from custody"); *Mejia*, 2026 WL 3019449, at *2 (release ordered where "[o]n the present record, there is no evidence of any warrant and no evidence of any 'reason to believe' Petitioner was likely to escape before a warrant could be obtained"); *Marcos Nicolas v. Warden*, No. 5:26-CV-05836-SSS-ADS, 2026 WL 3050284, at *1 (C.D. Cal. Oct. 12, 2026) ("Respondents provide neither a pre-arrest warrant nor additional evidence supporting likely escape, and their Opposition does not address this claim. Accordingly, Petitioner is likely to establish that his warrantless arrest violated § 1357(a)(2).").

41. Even if Respondents claim the exceptions applied, their application to Petitioner's arrest would be unconstitutional. While under these statutory and regulatory

requirements, the officer must have "reason to believe" that the noncitizen is violating the law and is likely to escape, this "reason to believe" standard must still comport with the requirements of the Fourth Amendment. *See Trump v. Illinois*, 146 S. Ct. 432, 436 n. 4 (2025) (Kavanaugh, J. concurring) (explaining that immigration stops must meet the mandates of the Fourth Amendment).

42. Accordingly, "to avoid running afoul of the Fourth Amendment," the phrase "reason to believe" as used in section 1357(a)(2) is "'considered the equivalent of probable cause.'" *Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 3d 1, 30 (D.D.C. 2025) (quoting *Au Yi Lau v. U.S. Immigr. & Naturalization Serv.*, 445 F.2d 217, 222–23 (D.C. Cir. 1971)) (additional citations omitted); *see also Morales v. Chadbourne*, 793 F.3d 208, 216 (1st Cir. 2015) (collecting cases); *Tejeda-Mata v. Immigr. & Naturalization Serv.*, 626 F.2d 721, 725 (9th Cir. 1980) (same); *Baker v. McCollan*, 443 U.S. 137, 142 (1979) ("[T]he Fourth Amendment requires . . . a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty." (citation omitted)); *Lee v. Immigr. & Naturalization Serv.*, 590 F.2d 497, 500 (3d Cir. 1979) ("[I]t has been held that the statutory requirement that an officer have 'reason to believe' a person is an illegal alien before he may arrest him without a warrant must be interpreted as coterminous with the fourth amendment's requirement of probable cause"). Thus, prior to conducting a warrantless arrest, immigration officers must have probable cause to believe both that a person is in the United States in violation of a relevant law, ***and*** that they are a flight risk. *Escobar Molina*, 811 F. Supp. 3d at 30.

43. The question whether one is likely to escape before a warrant can be obtained "considers not just whether the noncitizen will be located at the scene of encounter with immigration enforcement but also whether immigration enforcement would be able to arrest the noncitizen at 'another clearly identifiable location.'" *Walther Ademir A. S. v. Blanche*, No. 26-cv-2804, 2026 WL 1734906, at *3 (D. Minn. June 16, 2026) citing *Escobar Molina v. U.S. Dep't of Homeland Sec.*, No. 25-cv-3417, 2026 WL 1256234, at *10 (D.D.C. May 7, 2026). This, in turn, involves consideration of Petitioner's community ties. *See Escobar*

*Molina*, 2026 WL 1256234, at *12; *M-J-M-A- v. Hermosillo*, No. 25-cv-02011, 2026 WL 562063, at *1 (D. Or. Feb. 27, 2026).

44. Here, Respondents have not fulfilled the requirements of this statutory provision as they cannot show that they had probable cause to believe both that Petitioner was in the United States in violation of the law *and* that he was a flight risk before they arrested him without a facially-valid warrant. Upon information and belief, Respondents made no attempt to determine whether Petitioner, who has resided in California for over 25 years and has 4 U.S. citizen children, could be located at another clearly identifiable location or to assess Petitioner's community ties. Thus, ICE did not have the "reason to believe" that Petitioner was likely to escape required by statute.

45. Any post-hoc justification of Petitioner's arrest would be insufficient to remedy the statutory and constitutional violation here inflicted. *See*, *e.g., Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1226–27 (D. Colo. 2025) (rejecting post hoc warrants as a cure to a violation of section 1357(a)(2)) (citing *Castañon Nava v. U.S. Dep't of Homeland Sec.*, 435 F. Supp. 3d 880, 904 (N.D. Ill. 2020)); *Sargento-Ramirez v. Warden*, No. 1:26-cv-07528-DAD-SCR (HC), 2026 WL 2883476, at *1 (E.D. Cal. Sept. 25, 2026) ("[W]hen the government fails to arrest a petitioner following or contemporaneously with the issuance of a warrant or provide a petitioner with an initial custody determination either prior to or contemporaneously with detention, as required by § 1226(a), immediate release is mandated.") (citation omitted).

46. Because Petitioner's "arrest and detention were blatantly unlawful from the start, the only commensurate and appropriate equitable remedy to even partially restore [Petitioner] is to immediately release [him] and enjoin the Government from further similar transgressions." *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 373 (S.D.N.Y. 2019); *Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099, at *18 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted sub nom. Rocha Rosado v. Figueroa*, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025) ("[Petitioner's] release from detention should be granted because her Fourth Amendment

rights were violated."); *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 422–23 (S.D.N.Y. 2025) (ordering immediate release where detention was product of "uncontested" Fourth Amendment violations); *Arias v. Noem*, 818 F. Supp. 3d 864, 866 (W.D. Tex. 2026) (ordering immediate release where officers relied on an administrative warrant "issued by the executive branch to itself" rather than any probable cause determination to justify detention, which violated the Fourth Amendment).

47. For these reasons, Petitioner's arrest violates the INA.

## II. Detention Without an Individualized Determination Violates Due Process

48. The Due Process Clause of the Fifth Amendment entitles noncitizens to due process of law. *Reno v. Flores*, 507 U.S. 292, 306 (1993). As clearly enunciated by the Supreme Court, the protection of the Due Process Clause applies to noncitizens in the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas,* 533 U.S. at 693 (citations omitted). Due process requires "that a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it." *Mathews v. Eldridge*, 424 U.S. 319, 348–49 (1976).

49. "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017).

50. Given the strong liberty interest at stake, the Fifth Amendment's guarantee of due process requires at least some notice and an opportunity to be heard before a person can be placed in immigration detention. *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025). Due process requires that "notice must be afforded within a reasonable time and in such manner as will allow [noncitizens] to actually seek . . . relief[.]" *Id.* Here, that requires a pre-deprivation opportunity to be heard before Petitioner's arrest.

51. Courts in this District have used the three-factor balancing test set forth in *Mathews*, 424 U.S. at 335, to evaluate due process challenges to immigration detention. These factors are: (i) "the private interest that will be affected by the official action"; (ii)

"the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (iii) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335 (internal quotations omitted). Under *Mathews*, Petitioner's detention without a warrant or a prior or contemporaneous individualized determination violates due process.

52. As to the first factor, freedom from imprisonment, physical restraint, or other forms of government custody is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Castellanos Franco v. Warden, Adelanto ICE Processing Ctr.*, No. 5:26-CV-05549-MWC-DMK, 2026 WL 2922670, at *4 (C.D. Cal. Sept. 29, 2026) ("a petitioner may have a liberty interest in freedom from detention regardless of whether he was previously in ICE detention."); *Villa Cambron*, 2026 WL 2584950, at *5 ("Petitioner's twenty years of residence in the U.S., as well as his familial and financial connections here, further support a finding that he has a protected interest in remaining free from immigration custody.").

53. Here, Petitioner has resided in the United States for over 25 years and is the father to four U.S. Citizen children. Given Petitioner's long residence in the U.S. and deep family and church ties, he has a strong liberty interest, and the first factor weighs heavily in his favor.

54. With respect to the second factor, "the risk of erroneous deprivation of liberty is high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker to determine whether Petitioner's detention bears a reasonable relation to the authorized statutory purposes of civil immigration detention: to ensure appearance at future immigration proceedings or to prevent danger to the community." *Perez Bueno v. Janecka*, No. 5:25-CV-03376-CAS-BFM, 2026 WL 309934, at *4 (C.D. Cal. Feb. 5, 2026); *Villa Cambron*, 2026 WL 2584950, at *6 ("Respondents have never explained . . . what factual basis ICE has (if any) for determining that Petitioner is a flight risk or a danger to the

community. A pre-deprivation hearing would require the government to produce its evidence of changed circumstances and give Petitioner an opportunity to challenge that evidence. This is a significant procedural safeguard.”).

55. As for the third factor, “[t]hough the government has an interest in the steady enforcement of its immigration laws, the government's interest in detaining Petitioner without any procedural protections is slight. . . . And custody hearings for immigration detention are routine and impose a ‘minimal’ cost on the government. *Castellanos Franco*, 2026 WL 2922670, at *5 (citations omitted). Also, the government has an interest in “minimizing the enormous impact of incarceration in cases where it serves no purpose.” *Velasco Lopez v. Decker*, 978 F.3d 842, 852 (2d Cir. 2020); *Valdez v. Joyce*, 803 F. Supp. 3d 213, 218-19 (S.D.N.Y. 2025). The third factor also weighs in favor of a noncitizen where the government violates its own regulations and statutes. *Mejia Huerta v. Noem*, 2026 WL 555014, at *4 (S.D.N.Y. Feb. 27, 2026) (“[P]roviding Petitioner with a properly executed warrant would not have imposed a burden on the Government that it was not already required to undertake.”); *see also Mejia*, 2026 WL 3019449, at *2 (“It should go without saying that federal agencies, including ICE, must follow federal law, including federal regulations.”).

56. Recent decisions by federal courts in various jurisdictions confirm that due process requires the government to make individualized determinations to detain noncitizens and give them notice and a meaningful opportunity to be heard when challenging their detention. *See*, *e.g.*, *Castillo-Hernandez v. Warden, Adelanto Ice Processing Center*, No. 5:26-CV-05743-MBK, 2026 WL 3034587, at *5 (C.D. Cal. Oct. 9, 2026).

57. Further, if a noncitizen does not receive individualized consideration pre-deprivation, his due process rights are irrevocably violated, and no amount of procedure provided post-detention can remedy that violation. *See*, *e.g.*, *Villa Cambron*, 2026 WL 2584950, at *6 (“Releasing Petitioner is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents violated Petitioner's due

process rights. Moreover, allowing the government to 'cure' such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless . . ..”); *Mejia*, 2026 WL 3019449, at *2 (“A belated bond hearing would not remedy the federal law violations Petitioner unjustifiably has suffered. The most appropriate remedy for these violations is to release Petitioner from detention immediately.”); *see also Pang v. Warden*, No. 3:26-CV-05047-LEK-JLB, 2026 WL 2925852, at *5 (S.D. Cal. Sept. 29, 2026) (internal citations and quotation marks omitted) (“a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty. Neither the bond hearings that Petitioners have received nor any further bond hearing would remedy the Fifth Amendment violation that Petitioners have already experienced. Only release from detention can accomplish that now.”).

58. Here, immediate release is appropriate because Respondents have not—and cannot—show that they conducted an individualized determination regarding Petitioner before his summary arrest. “Such a remedy is appropriate because Petitioner's arrest and detention were unlawful from their inception. Where an individual's 'imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release.'” *Mejia Huerta*, 2026 WL 555014, at *4 (quoting *Rojas v. Almodovar*, No. 25-CV-7189 (LJL), 2025 WL 3034183, at *8 (S.D.N.Y. Oct. 30, 2025)).

## <u>CLAIMS FOR RELIEF</u>

## <u>COUNT ONE</u>

## IMMIGRATION STOP AND WARRANTLESS ARREST IN VIOLATION OF THE IMMIGRATION AND NATIONALITY ACT, 8 U.S.C. § 1357(a)(1) and (2) and IMPLEMENTING REGULATIONS 8 C.F.R. § 287.8(c)(2)(i)-(ii)

59. Petitioner realleges and incorporates by reference each and every allegation contained above.

60. Immigration officers are authorized to arrest noncitizens pursuant to an administrative warrant of arrest. Absent a warrant, the INA permits a warrantless arrest only upon a showing of a reason to believe that a noncitizen (1) "is in the United States in violation of any such law or regulation [related to the admission, exclusion, expulsion or removal of noncitizens]" and (2) "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.8(c)(2)(i)-(ii). Reason to believe is the equivalent of probable cause.

61. The Court in *Vasquez Perdomo* enjoined Respondents from conducting the very sort of warrantless arrest at issue here because 8 U.S.C. § 1357 "requires that an officer who seeks to conduct a warrantless arrest must have reason to believe ... that the [noncitizen] is *likely to escape* before a warrant can be obtained for his arrest[,]" and by maintaining warrantless arrest policies including "no escape risk assessment, escape risk assessment based solely on unlawful status, and escape risk assessment based on false assertions[,]" Respondents "violat[ed] federal law and the rights of Plaintiffs[.]" *Vasquez Perdomo*, 2026 WL 2751388, at *17-18 (emphasis in original) (citations omitted).

62. Here, Petitioner alleges that he was never served with a Form I-200 upon arrest. Accordingly, if Respondents did not issue a Form I-200 prior to Petitioner's arrest, they did not satisfy both prongs of this test that would justify a warrantless arrest, and a post-hoc arrest warrant does not authorize them to make an arrest under 8 U.S.C. § 1357(a)(2). Therefore, if Petitioner's arrest and detention were without a warrant, Respondents violated the INA.

63. Immigration officers are authorized to perform immigration stops of noncitizens only upon a reasonable suspicion, based on specific articulable facts that the person being questioned is a noncitizen illegally in the United States *and* that they would be likely to escape before a warrant could be issued.

64. Respondents made no individualized determination that Petitioner would be likely to escape before a warrant could be secured. Petitioner, a 26-year resident of California with extensive family ties, was apprehended near his home at his own apartment

complex. There is no indication that, had Respondents obtained an administrative warrant, they would have been unable to find Petitioner or that he would have escaped enforcement.

65. Because Respondents failed to meet the requirements for a warrantless arrest under 8 U.S.C. § 1357(a)(1) and (2)—and any warrant they may have issued would be invalid because it preceded the filing of the NTA, Petitioner's arrest and detention violate the INA.

**<u>COUNT TWO</u>**

**IMMIGRATION STOP AND WARRANTLESS ARREST IN VIOLATION OF THE IMMIGRATION AND NATIONALITY ACT,**

**8 U.S.C. § 1226(a), 8 C.F.R. § 236.1, 8 C.F.R. § 1236.1(c)(8)**

66. Petitioner realleges and incorporates by reference each and every allegation contained above.

67. Detention under § 1226(a) is authorized "on a warrant issued by the Attorney General."

68. Implementing regulations only authorize arrest under an I-200 warrant "at the time of the issuance of the notice to appear, or any time thereafter." 8 C.F.R. § 236.1(b)(1).

69. Here, it is unclear if a Form I-200 was ever issued. But if any such document was issued contemporaneously with Petitioner's arrest, it is invalid, because it would have preceded the issuance of the Notice to Appear in Petitioner's case. Because Petitioner's notice to appear was issued after the I-200, Petitioner's arrest and detention under § 1226(a) is unlawful. *See, e.g., Yeleshev*, 2026 WL 1353806, at *2; *Parada Cruz*, 2026 WL 1027441, at *2.

70. Implementing regulations further require that the arresting officer make an initial custody determination under 8 C.F.R. § 236.1(c)(8) prior to detention to determine whether a noncitizen presents a flight risk or danger. There is no evidence that this determination was made prior to detention, and there is no basis for a finding that Petitioner presents a risk of danger or flight. Therefore, Petitioner's detention is unlawful.

**COUNT THREE**

**VIOLATION OF THE *ACCARDI* DOCTRINE**

71. Petitioner realleges and incorporates by reference each and every allegation contained above.

72. The *Accardi* doctrine holds that government agencies are bound to follow their own rules and internal procedures that regulate the rights and interests of others. *See Montilla v. INS*, 926 F. 2d 162, 166-67 (2d Cir. 1991) (explaining the *Accardi* doctrine) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)).

73. On information and belief Respondents have violated several binding regulations in detaining Petitioner: 8 C.F.R. §§ 236.1(b)(1), (c)(8) and 1236.1(b)(1), (c)(8) (requiring issuance of warrant of arrest and individualized determination as to danger and flight risk); 8 C.F.R. § 287.8(b)(2) (requiring reasonable suspicion based on specific articulable facts before immigration stop) and (c)(2)(ii) (requiring individualized assessment as to flight risk before warrantless arrest).

74. Respondents' detention of Petitioner therefore violates the *Accardi* doctrine.

**COUNT FOUR**

**VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION**

**(Procedural Due Process)**

75. Petitioner realleges and incorporates by reference each and every allegation contained above.

76. The Due Process Clause of the Fifth Amendment forbids the government from depriving any person of liberty without due process of law. U.S. Const. amend. V. *See generally Flores*, 507 U.S. at 292; *Zadvydas*, 533 U.S. at 678; *Kim*, 538 U.S. at 510 (2003).

77. The three *Mathews v. Eldridge* factors determine what due process requires in the context of immigration detention. These factors are: (i) "the private interest that will be affected by the official action"; (ii) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute

procedural safeguards"; and (iii) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335 (cleaned up).

78. Under this framework, arrest without a warrant, without notice, without an opportunity to respond, and without any meaningful evaluation to particular circumstances, including whether Petitioner poses a flight risk or a danger to the community, would violate due process. Petitioner was entitled to notice and due process of law *in advance* of any detention. *Cf. Contreras Maldonado v. Cabezas*, No. 25-13004, 2025 WL 2985256, at *5 (D.N.J. Oct. 23, 2025).

79. As to the first *Mathews* factor, Petitioner's private interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). *See also Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (freedom from restraint is at the core of the liberty protected by the Due Process Clause from arbitrary governmental action) *see also Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent.").

80. While all persons present in the United States hold a private interest in avoiding unjustified or arbitrary detention, Petitioner's long residence in the U.S. and deep ties to U.S. citizen family heighten his liberty interest.

81. As to the second *Mathews* factor, the risk of erroneous deprivation is high: Respondents detained Petitioner without a valid warrant, without notice, without an opportunity to respond, and without any meaningful evaluation as to his particular circumstances, including whether he poses a flight risk or a danger to the community. Had Respondents provided Petitioner with an opportunity to be heard prior to detention, he could have presented evidence regarding, *inter alia*, his community ties, law-abiding nature, and his viable claim to cancellation of removal. By failing to provide Petitioner notice and due process of law in advance of any detention, Respondents created an enormous risk of

erroneous deprivation of Petitioner's liberty interest; one that has actually come to pass in his case.

82. The availability of a post-deprivation bond hearing does not cure Respondents' failure to provide Petitioner an opportunity to present this evidence before ambushing him near his apartment complex, handcuffing him, and tossing him into a jail cell. "The suggestion that government agents may sweep up any person they wish without consideration of dangerousness or flight risk, so long as the person will, at some unknown future date, be allowed to ask some other official for his or her release, offends the ordered system of liberty that is the pillar of the Fifth Amendment." *Aliaga Zamora v. Bondi*, No. SA-26-CV-447 (XR), 2026 WL 693054, at *15 (W.D. Tex. Mar. 10, 2026). Scooping up law-abiding individuals without any individualized determination about their dangerousness or flight risk is not a harmless act that can be remedied by a subsequent hearing.

83. Lastly, the Government has no legitimate interest in detaining Petitioner absent a valid purpose or reasonable relationship to preventing danger to the community or ensuring his appearance at future hearings.

84. For the foregoing reasons, Respondents' detention of Petitioner violates the rights guaranteed to him by the Due Process Clause of the Fifth Amendment to the United States Constitution. Petitioner should be released forthwith.

**COUNT FIVE**

**VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION**

**(Substantive Due Process)**

85. Petitioner realleges and incorporates by reference each and every allegation contained above.

86. The Due Process Clause prohibits the government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. At its core, a person's protected liberty interest mandates freedom from arbitrary imprisonment and

applies with equal force to individuals in immigration detention. *Zadvydas*, 533 U.S. at 690; *Doherty v. Thornburgh*, 943 F.2d 204, 209 (2d Cir. 1991). Because "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception," the government may imprison people as a preventive measure only within strict limits. *Foucha v. Louisiana*, 504 U.S. 71, 83 (1992) (quoting *U.S. v. Salerno*, 481 U.S. 739, 755 (1987)).

87. In the immigration context, detention is nonpunitive and therefore held to different standards than criminal detention. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 491 (1999). Specifically, courts have recognized only two legitimate purposes for immigration detention: mitigating flight risk and preventing danger to the community. *See Zadvydas,* 533 U.S. at 690; *Velasco Lopez*, 978 F.3d at 853–54; *Faure v. Decker*, No. 15-CV-5128, 2015 WL 6143801, at *3 (S.D.N.Y. Oct. 19, 2015).

88. Throughout the years that he's been in the United States, Petitioner has proven that he is not a flight risk or a danger to the community at large. *See Zadvydas*, 533 U.S. at 690–91 (noting that immigration detention aims to ensure the detainee's appearance at immigration proceedings and protect the community from dangerous individuals). Because Respondents' detention of Petitioner bears no "reasonable relation" to the government's interests in preventing flight and danger, *Jackson v. Indiana*, 406 U.S. 715, 738 (1972), his detention is devoid of any reasoned justification.

89. For the foregoing reasons, Respondents' arbitrary and abrupt detention of Petitioner violated his substantive due process rights.

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court:

1. Assume jurisdiction over this matter;

2. Pursuant to 28 U.S.C. § 2243, issue an order to show cause directing Respondents to file a return within three (3) days absent good cause for a short extension, and set the matter for prompt hearing;

3. Enjoin Respondents from transferring Petitioner out of the Central District of California pending the duration of these proceedings;

4. Declare that Petitioner's detention violates the Immigration and Nationality Act and implementing regulations;

5. Declare that Petitioner's detention and Respondents' actions violate the Due Process Clause of the Fifth Amendment;

6. Issue a writ of habeas corpus directing Respondents to immediately release Petitioner from custody without any additional restraints on his liberty, including electronic monitoring;

7. Prohibit Petitioner's re-detention by Respondents unless Petitioner is provided a pre-detention hearing before an immigration judge, where the government bears the burden to justify material changed conditions require Petitioner's detention, and the Court considers less restrictive alternatives to detention;

8. Award reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412; and

9. Grant such further relief as this Court deems just and proper.

Dated: October 19, 2026

GILBERT & SACKMAN, A Law Corporation

By: /s/ Joshua F. Young
JOSHUA F. YOUNG
Attorneys for Petitioner

**VERIFICATION BY COUNSEL ACTING ON THE PETITIONER'S BEHALF PURSUANT TO 28 U.S.C. § 2242**

I, Joshua F. Young, declare:

I am submitting this verification on behalf of Petitioner because I am an attorney for Petitioner. I have discussed with close personal contacts of Petitioner the events described in this Petition. Based on those discussions, I hereby verify that the statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge. This verification is being made by counsel with permission of the Petitioner rather than by Petitioner himself due to counsel's inability to meet with the Petitioner in a timely fashion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 19, 2026.

/s/ Joshua F. Young
JOSHUA F. YOUNG